**Richmond**

GARY ANTHONY LEWIS

v.

COMMONWEALTH OF VIRGINIA

No. 1321-86-2

Decided January 17, 1989

COUNSEL

James F. Parkinson, III (Smith, Moncure, Blank, Issacs & Hinton, on brief), for appellant,

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General of Virginia, on brief), for appellee.

OPINION

DUFF, J.—Gary Anthony Lewis appeals his convictions of robbery and use of a firearm in the commission of the robbery. Upon the jury's recommendation Lewis was sentenced to twenty-five years in the penitentiary for the robbery charge and two years for the firearm charge.

Appellant contends that the trial court erred in admitting into evidence the testimony of the victim that appellant had robbed him in a similar manner approximately three weeks previously. Appellant also argues that the evidence was insufficient to support his conviction of robbery and use of a firearm during the commission of the robbery. We disagree and affirm the convictions.

When viewed in the light most favorable to the Commonwealth, the evidence showed the following: Andre Robinson, the manager of Domino's Midlothian Pizza and two employees were robbed at approximately 10:30 p.m. on July 30, 1986, by Lewis and an accomplice. Lewis, at gunpoint, ordered the two employees to go with him into the office. Robinson was already in the office and Lewis, still carrying the gun, said to Robinson, "Give me all your money or I'll blow your f_____ head off." Robinson and the two employees remained in the office with Lewis for approximately three to five minutes. The room was well lit at all times

during the robbery. All three victims identified Lewis as the person who committed the robbery at gunpoint. All three also testified that appellant was wearing a white shirt, blue pants and holding a blue washcloth over part of his face.

At trial Curtis Sheppardson, the accomplice, testified for the Commonwealth. He told the court he was paid $100 for his participation as a "lookout" during the robbery and that Lewis had entered the store and committed the crime.

Robinson's trial identification of Lewis as the person who robbed him could be attributed, in part at least, to the fact that he had been robbed by Lewis in the same store approximately three weeks earlier. At that time, Lewis was accompanied by Sheppardson, and another individual. After the earlier robbery, Robinson was shown a photo spread by the police and asked if he recognized anyone. He identified Sheppardson as one of the robbers. Lewis's picture was not in the photo spread. After the July 30 robbery, Robinson was again shown the same photo spread, and he again identified Sheppardson as one of the robbers three weeks earlier. Robinson did not see Sheppardson during the second robbery. The defendant's picture was never included in the photo spread.

The first issue on appeal is the testimony of the victim, Andre Robinson, concerning his identification of the defendant, who had robbed him in a similar manner three weeks prior to the July 30, 1986 robbery conviction now before us.

Prior to Robinson's trial testimony, the court heard a motion in limine by Lewis's counsel, who expressed concern about Robinson's anticipated testimony. He argued that at a preliminary hearing, while identifying Lewis, Robinson had made reference to the fact that Lewis had been the man who robbed him at the same store on a previous occasion in a similar manner. Counsel also noted that Robinson had testified at the preliminary hearing that he had picked Lewis out of a photo spread, when he actually had picked Sheppardson. Counsel for Lewis expressed concern that Robinson was confused. Robinson then testified that he had not been confused about the identity of Lewis, but at the preliminary hearing he was confused as to the defendant's name. He stated that he did not pick the defendant, Gary Lewis, out of the two photo spreads he was given. He testified that the defendant's

picture was not included in either spread. Robinson explained that he was given pictures and a name in the first photo spread, and he identified Sheppardson's picture as the companion in the first robbery. Robinson also testified that after the second robbery, he was given another photo spread. He, again, identified Sheppardson's picture as one of the robbers in the first robbery. Robinson testified that both Sheppardson and Lewis were present at the defendant's preliminary hearing. He stated that the two did not look alike, because Sheppardson is taller and lighter than Lewis. Robinson also explained Lewis's actions and clothing worn at the first robbery. Counsel then moved to prohibit any reference by Robinson to the fact that Lewis had robbed him on a previous occasion.

Upon inquiry by the court, the Commonwealth indicated that it would only elicit the testimony relating to the prior robbery if the defendant questioned Robinson about his identification of Lewis. The court deferred any ruling concerning the admissibility of such evidence on rebuttal until it arose. The court then instructed Robinson that on direct examination, he should not, under any circumstances, mention the first robbery. The witness was also instructed that he should only speak of the prior robbery if defense counsel specifically asked him.

Robinson's testimony before the jury, on direct examination, did not include any reference to the first robbery. It was confined to the events of July 30, 1986, the date of the crime for which the defendant was being tried. On cross-examination, however, he was questioned about the photo spread shown to him and asked whether he had picked out the defendant. When Robinson responded in the negative, defense counsel asked if he recalled testifying at the preliminary hearing that he had identified the defendant from the photo spread. Robinson recalled making such a statement.

On redirect examination, the Commonwealth elicited from Robinson that Lewis' picture was not in the photo spread and that the person whose picture he had picked out had participated in a prior robbery at the store three weeks earlier. Counsel for the Commonwealth then inquired if Robinson had ever seen the defendant prior to July 30, 1986.

Upon objection, a bench conference ensued at which time the defendant argued that Robinson had been instructed by the court not to refer to the prior robbery. The court ruled, however, that in his cross-examination, defense counsel had raised the issue of identification and, consequently, had opened the door for the Commonwealth to show that Robinson had seen Lewis before and the circumstances surrounding it. The court then instructed the jury as follows:

Ladies and gentlemen, you are concerned with the charge in this particular case; that is, the robbery of the witness Andre Robinson on July 30, 1986. This evidence is being admitted for the soul (sic) purpose of whether the witness has properly or improperly identified the person who robbed him on July 30. It is limited to that alone.

In *Day v. Commonwealth*, 196 Va. 907, 914, 86 S.E.2d 23, 26-27 (1955), the Court stated:

The accepted rule to be derived from the cases is that evidence which shows or tends to show the accused guilty of the commission of other offenses at other times is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense similar to that charged; but if such evidence tends to prove any other relevant fact of the offense charged, and is otherwise admissible, it will not be excluded merely because it also shows him to have been guilty of another crime.

In *Day*, the evidence at issue was a woman's statement that she was chased by the defendant immediately prior to the time that the defendant was accused of the robbery, sodomy, and attempted rape of another woman. The woman testified as follows:

[S]he was standing on the corner of Grace and Knight Streets waiting for a bus at 7:10 o'clock on the night of February 1, 1954. While she was standing there she stated she saw the defendant, or a man she felt reasonably sure was the defendant, Earl Day, coming towards her. She was frightened and started to run and he started to run after her. She

saw the bus coming and she ran to the bus and he chased her to the door of the bus. As she was getting on the bus she heard him call something like, "You had better run." In her testimony, she said the man was the defendant but she did not see his features but the man wore a white cap and a jacket like the ones belonging to the defendant and which were exhibited to her during her testimony; the ones he was wearing when arrested. *** At this time [upon returning over the same route on the next bus] she saw the same man . . . at Knight and Grace Streets standing near the corner of Locust and Grace Streets, which was one city block from Grace and Knight Streets. She never did see the man's face so as to positively identify him but she did notice he was wearing a similar cap and jacket to those worn by the man who chased her.

*Id.* at 910, 86 S.E.2d at 24-25.

On appeal, Day argued that the woman's testimony was inadmissible because the alleged act was separate from the alleged offenses and "because it served only to inflame the minds of the jury and to prejudice them against him. *Id.* at 92, 86 S.E.2d at 25. The Commonwealth argued the evidence was admissible because it tended to identify the accused by placing him in the area at the time of the alleged crimes.

The Court stated that "[t]he Commonwealth not only sought to show by the testimony of this witness that the defendant was in the vicinity within a few minutes of the time of the alleged offenses, as it had a right to do, but it also sought to show the defendant's "state of mind to molest women." *Id.* at 914-15, 86 S.E. 2d at 27 (emphasis added). The Court found the evidence inadmissible because it showed the defendant's state of mind to molest women. *Id.* The Court noted that the Commonwealth had a right to introduce the testimony for identification purposes, but also noted that the probative value of the evidence to show that the defendant was in the vicinity was doubtful. The witness was not positive in her identification, she did not see his features, and could only describe his clothing. *Id.*

In the instant case, if no question had been raised regarding identification on cross examination, the issue of the prior robbery would not have arisen. A fair reading of the cross-examination

shows that the questions could be interpreted by the jury as conveying an impression of confusion on the part of the witness as to who he had picked out of the photo spread. This cast doubt on Robinson's identification of Lewis. Under such circumstances, the court was required to balance the probative value of allowing the Commonwealth to explain Robinson's ability to identify Lewis against any incidental prejudice involved by the jury learning of the prior robbery. *Hawks v. Commonwealth*, 228 Va. 244, 247, 321 S.E.2d 650, 652 (1984) (citing *Lewis v. Commonwealth*, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983); *Evans v. Commonwealth*, 222 Va. 766, 773-74, 284 S.E.2d 816, 820 (1981), *cert. denied*, 455 U.S. 1028 (1982). The determination and weighing of the probative value of the proffered evidence rests with the trial court and will be reviewed only for an abuse of discretion. *Collins v. Commonwealth*, 226 Va. 223, 307 S.E.2d 884 (1983); *Coe v. Commonwealth*, 231 Va. 83, 340 S.E.2d 820 (1985); *Curtis v. Commonwealth*, 3 Va. App. 636, 352 S.E.2d 536, 537 (1987).

We find no abuse of discretion. The probative value was obvious in explaining and confirming the witness' ability to identify Lewis. He had seen him three weeks earlier and under circumstances which would certainly add to the credibility of the identification. If Robinson had been the only witness to identify Lewis, prejudice would have been more substantial than in this instance where two other eye witnesses also positively identified him. We believe the trial court exercised commendable caution in its receipt of the evidence. The court promptly instructed the jury that identification was the only purpose for which the evidence was being received. Also, during the testimony the court prohibited Robinson from elaborating as to the events of the first robbery, and later the jury was again cautioned as to their use of the evidence. The trial court did not err in admitting the evidence after determining that its probative value outweighed its prejudicial effect.

Once a jury is instructed regarding the use or limitations placed upon specific evidence, they are presumed to follow such instructions. *Albert v. Commonwealth*, 2 Va. App. 734, 741, 347 S.E.2d 534, 538 (1986); *Johnson v. Commonwealth*, 2 Va. App. 598, 602, 347 S.E.2d 163, 166 (1986); *Stotler v. Commonwealth*, 2 Va. App. 481, 484-85, 346 S.E.2d 39, 41 (1986). Our review of the record shows nothing to indicate that the jury did not follow the court's clear instructions and, consequently, it must be pre-

sumed that the use of the evidence was properly limited.

The context in which this evidentiary problem arose distinguishes it from *Sutphin v. Commonwealth*, 1 Va. App. 241, 337 S.E.2d 897 (1985). In *Sutphin*, the Commonwealth attempted to prove the criminal agency of the defendant by circumstantial evidence of a similar crime. There was no direct eye witness evidence of identification. We held that evidence of the other crime was inadmissible to prove the identity of the defendant as the perpetrator of the subsequent crime because the methods of committing the burglaries were not so distinctive as to indicate a modus operandi. Here there was direct evidence of identification by three eye witnesses and also the accomplice who testified for the Commonwealth. Lewis's questioning of Robinson on cross-examination called the reliability of his identification into question and, thus, opened the door for the evidence to be received. Its purpose was not to prove identity on the basis of similar modus operandi as in *Sutphin*.

■ The trial court's ruling finds support in C. Friend, *The Law of Evidence in Virginia*, § 355 (2d ed. 1983), which observes that it has been suggested in some cases that evidence of other crimes is admissible if the accused has in any way elicited or opened the door to such evidence. *Whitley v. Commonwealth*, 223 Va. 66, 75, 286 S.E.2d 162, 167 (1982); *Patterson v. Commonwealth*, 222 Va. 653, 663, 283 S.E.2d 212, 218 (1981).

The final issue raised in this appeal is the sufficiency of the evidence to support the conviction. The Commonwealth urges us not to consider this issue as it was not properly preserved for appeal. It is true that no motion to strike was made; however, after the jury returned its verdicts, defendant moved the Court to set them aside as being contrary to the law and the evidence and, "for reasons in my closing argument. . . ." The court considered the motion on its merits, including the closing argument, and denied it.

■ The Supreme Court has recognized that a motion to set aside a verdict still survives as a proper method of testing the sufficiency of the evidence. *Gabbard v. Knight*, 202 Va. 40, 43, 116 S.E.2d 73, 75 (1960).

We have examined the record, and noted the defense's closing argument emphasized that the jury should not believe

Sheppardson because he was a robber and a liar. This argument could be viewed as raising the question of the sufficiency of the evidence to sustain the convictions.

■ As the trial judge considered the reasons stated in the closing argument in deciding the motion, we believe the purpose of Rule 5A:18 has been served, and that the ends of justice require us to consider the issue on its merits. We are required to view the evidence in the light most favorable to the Commonwealth. The judgment appealed from must be affirmed, unless it appears from the evidence that it is plainly wrong or is without evidence to support it. *Higgenbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Lewis argues that, absent evidence of the prior robbery, all the Commonwealth proved was that Sheppardson and another person robbed Robinson of the store's money. We disagree. This argument ignores the positive identification testimony of Robinson and the two other Domino employees who were in close proximity to Lewis during the robbery, and testified that he was the armed robber who entered the store alone, threatened them, and left with the money. The defendant was also identified by his accomplice as the person who entered the store and committed the crime.

The fact that there were conflicts in the evidence does not support the defendant's motion as to sufficiency. It was the jury's function to weigh the evidence and resolve any conflicts. We find ample credible evidence in the record to support their finding. Accordingly, the trial Court did not err in denying the motion to set aside the verdict for insufficiency of the evidence.

For these reasons the convictions appealed from are

*Affirmed.*

Cole, J., concurred.

Benton, J., dissenting.

I agree with the view expressed in the majority opinion that Lewis is not procedurally barred from raising the issue of the sufficiency of the evidence to support the conviction. However, because the other crimes evidence was prejudicial, I would reverse and remand for a new trial.

Absent well established exceptions, evidence that a defendant has committed crimes other than the offense for which he then is being tried is inadmissible. *See Lewis v. Commonwealth*, 225 Va. 497, 502, 303 S.E.2d 890, 892-93 (1983); *King v. Commonwealth*, 217 Va. 912, 914, 234 S.E.2d 67, 69 (1977). To be admissible as an exception, evidence of other offenses must be relevant "(1) to prove motive to commit the crime charged; (2) to establish guilty knowledge or to negate good faith; (3) to negate the possibility of mistake or accident; (4) to show the conduct and feeling of the accused toward his victim, or to establish their prior relations; (5) to prove opportunity; (6) to prove identity of the accused as the one who committed the crime where the prior criminal acts are so distinctive as to indicate a *modus operandi*; or (7) to demonstrate a common scheme or plan where the other crime or crimes constitute a part of a general scheme of which the crime charged is a part." *Sutphin v. Commonwealth*, 1 Va. App. 241, 245-46, 337 S.E.2d 897, 900 (1985). The rationale behind the general rule of inadmissibility of evidence of other crimes is that "such evidence confuses one offense with the other, unfairly surprises the defendant with a charge he is unprepared to meet, and, by showing that the [defendant] has a criminal propensity, tends to reverse his presumption of innocence of the crime on trial." *Lewis*, 225 Va. at 502, 303 S.E.2d at 893. I dissent from the majority opinion because this case does not fall within the exceptions to the rule barring evidence of other crimes.

This appeal arose from the conviction of Gary Anthony Lewis for the robbery of employees of a pizza restaurant on July 30, 1986. All three of the employees of the restaurant identified Lewis as the gunman who committed the robbery. None of the employees was able to identify the person who remained outside the store. As a witness for the Commonwealth, Sheppardson testified that he remained outside the restaurant and acted as a lookout while Lewis committed the robbery.

Prior to the testimony of Andre Robinson, one of the employees, defense counsel moved the trial judge to forbid Robinson from making any reference to another robbery (the first robbery) which occurred three weeks prior to the July 30 robbery. Robinson was questioned under oath out of the presence of the jury concerning the historical facts. Following a conference in chambers, the Commonwealth's Attorney said "I am going to elicit from . . .

Robinson . . . the testimony that [Lewis] was involved in the prior robbery." However, the entire context of the discussion on record suggests that he apparently *agreed not to question* Robinson concerning the first robbery unless defense counsel raised on cross-examination the question of identification. The trial judge stated that he would rule if, and when, the issue arose during Robinson's testimony. The trial judge also instructed Robinson not to mention the first robbery unless defense counsel "specifically asked . . . about it." Robinson then testified before the jury and identified Lewis as the person who robbed him on July 30. He testified that Lewis was standing across a desk from him in a brightly lighted room and was holding a blue rag in an attempt to mask part of his face. On cross examination Robinson was asked:

Q Did you ever pick this man out of any photographs shown to you by the police officers?

A No.

Q Do you recall the preliminary hearing when we were in court before, in lower court on this case?

A Yes.

Q Do you recall that you testified that you picked this man out of a photo spread?

A Yes.

Q But that's not what you did?

A No.

He was also questioned concerning Lewis' appearance on July 30 and the description of the gunman that he gave to the police.

On redirect examination Robinson stated that the person whose picture he picked from the photographic spread participated in the first robbery and that Lewis' picture was not in that photographic spread. The Commonwealth then asked Robinson: "Now, have you ever seen the defendant on any other occasion prior to July 30th?" Over defense counsel's objection, Robinson stated that Lewis participated in the first robbery. He then was permitted to testify in detail concerning the circumstances of the first robbery.

Defense counsel's motion for a mistrial was denied.

In *Day v. Commonwealth*, 196 Va. 907, 914, 86 S.E.2d 23, 26-27 (1955), our Supreme Court stated the general rule concerning the admissibility of evidence of other offenses:

> The accepted rule to be derived from the cases is that evidence which shows or tends to show the accused guilty of the commission of other offenses at other times is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense similar to that charged; but if such evidence tends to prove any other relevant fact of the offense charged, and is otherwise admissible, it will not be excluded merely because it also shows him to have been guilty of another crime.

One of the exceptions to the general rule barring evidence of other crimes involves the use of other crimes evidence to prove identity.

> Underlying this exception is the probability that a person who performs one act is the person who also performed another distinctively similar act. For this probability to exist the criminal acts must be "so distinctive as to indicate a *modus operandi*." Mere similarity standing alone is not enough. "Generally, the device used to commit the crime, or the manner in which the crime was committed, must be so unusual and distinctive as to act as a signature." The crimes must reflect a *modus operandi* that is so distinctive that it identifies the accused as the person who committed both offenses.

*Henderson v. Commonwealth*, 5 Va. App. 125, 128, 360 S.E.2d 876, 878 (1987)(citations omitted); *see also Sutphin*, 1 Va. App. at 246-47, 337 S.E.2d at 900.

In this case the majority opinion does not determine that the evidence of other crimes is "so unusual and distinctive as to act as a signature." *Id.* Rather, it holds that evidence of other crimes may be admitted merely to bolster a witness' identification of the defendant when the witness' testimony lacks clarity. I respectfully disagree. Neither of the two cases cited in the majority opinion for that proposition authorizes such use. *See Hawks v. Commonwealth*, 228 Va. 244, 321 S.E.2d 650 (1984)(evidence of a rape

which occurred during an abduction was admissible to prove intent to deprive of personal liberty); *Evans v. Commonwealth*, 222 Va. 766, 773-74, 284 S.E.2d 816, 820 (1981), *cert. denied*, 455 U.S. 1028 (1982) (evidence of pending charges admissible in a capital murder trial to show defendant's state of mind when he killed a sheriff during an escape from jail). *See also Williams v. Commonwealth*, 203 Va. 837, 127 S.E.2d 423 (1962)(evidence of prior assault by defendant against victim inadmissible to prove deliberation or premeditation in the commission of a murder months after the assault prosecution); *Day v. Commonwealth*, 196 Va. 907, 86 S.E.2d 23 (1955) (evidence that defendant chased a woman shortly before he was alleged to have raped another woman was inadmissible to establish intent to molest women and was of "doubtful" probative value as to identity); *Curtis v. Commonwealth*, 3 Va. App. 636, 352 S.E.2d 536 (1987) (evidence of prior rapes which were "so unusual and distinctive as to act as a signature" was admissible to prove identity of defendant as perpetrator in a rape case with "overwhelming similarities"); *Sutphin*, 1 Va. App. 241, 337 S.E.2d 897 (1985) (evidence of another burglary inadmissible to prove identity of defendant as perpetrator of subsequent, separate burglary because evidence did not establish that method of committing the burglaries was so distinctive as to indicate a *modus operandi*).

Even if we assume that the use of this evidence was permissible as an exception to the general rule, the legitimate probative value does not outweigh the prejudice to the accused. *See Hawks*, 228 Va. at 247, 321 S.E.2d at 652; *Curtis*, 3 Va App. at 638, 352 S.E.2d at 537-38. The majority opinion concludes that evidence of the first robbery was necessary to dispel any confusion raised in the minds of the jury as to why Robinson identified Sheppardson in the photo spread. Robinson's testimony concerning Lewis' alleged involvement in the first robbery, however, simply was not probative of why Robinson identified Sheppardson in the photo spread instead of Lewis. Nor was that testimony probative with respect to Robinson's statement on cross-examination that he had doubt at the preliminary hearing whether Lewis was the robber on July 30. At the time of the preliminary hearing Robinson was able to identify by sight the persons who committed the first robbery, and thus expressed certainty that Lewis was involved in the first robbery. However, despite seeing Lewis at the preliminary hearing, Robinson apparently expressed doubt at the time that Lewis

robbed him on July 30. Thus, proof that Lewis was a participant in the first robbery, which occurred prior to the preliminary hearing, could not have tended to make Robinson's identification of Lewis as the July 30 robber any more certain.

Moreover, Robinson testified that he identified Sheppardson as the robber in the July 30 robbery because he was asked to "pick out the person that [he] recognized." Lewis' photograph was not in the photographic spread that Robinson viewed. On redirect examination, Robinson's explanation that he recognized Sheppardson from a prior robbery served to simply and fully clarify the reason he had identified Sheppardson from the photographic spread. No further clarification was necessary and none ensued from Robinson's subsequent testimony that Lewis had been involved in the prior robbery as well. Robinson also explained in his testimony that his misstatement at the preliminary hearing occurred because he was confused by the question that was asked. Whatever confusion Robinson may have experienced at the preliminary hearing had an explanation independent of the circumstances surrounding Lewis' involvement in the first robbery.

Whether evidence is admissible always depends upon its probative value. *See Day*, 196 Va. at 912-13, 86 S.E.2d at 26-27. The basis for allowing proof of other offenses is that they are probative of contested issues in the case. If the only evidentiary value of another offense is to inferentially prove propensity to commit crimes, as it did in this case, such evidence cannot be admitted. *Id.* Other than exposing Lewis to the jury as a person who had a propensity to commit crimes, the testimony concerning the first robbery was immaterial.

Not only was the probative value of the testimony lacking, the testimony also was highly prejudicial. As aptly stated in *Day*:

[The witness's] detailed testimony constituted no material link in the chain of evidence, and obviously tended to inflame the minds of the jury and prejudice them against the defendant. This testimony amounted to a distinct charge which the defendant was not required to defend and which was not intimately connected and blended with any constituent element of any of the three serious offenses for which he was on trial.

*Id.* at 915, 86 S.E.2d at 27. The prejudice was significant because the jury, which had to determine Lewis' guilt, also fixed punishment. The evidence of prior offenses not only had the tendency to reverse the presumption of innocence, but it also impermissibly added an aggravating factor for the jury to consider in fixing punishment. The evidence was irrelevant, prejudicial, and should have been barred. *See Donahue v. Commonwealth*, 225 Va. 145, 156, 300 S.E.2d 768-74 (1983); *Eccles v. Commonwealth*, 214 Va. 20, 22-23, 197 S.E.2d 332, 333 (1973); *Boyd v. Commonwealth*, 213 Va. 52, 53, 189 S.E.2d 359, 360 (1972); *Fleenor v. Commonwealth*, 200 Va. 270, 275-76, 105 S.E.2d 160, 164 (1958).

Moreover, I disagree with the majority opinion's view that defense counsel's examination of Robinson opened the door for this prejudicial evidence. Defense counsel obviously had to make a difficult decision whether to question Robinson concerning his identification of Lewis. However, Robinson testified on cross-examination that at the time of the preliminary hearing he had some doubt as to whether Lewis was the person who robbed him July 30. Defense counsel obviously wanted to bring before the jury Robinson's doubt, as expressed at the preliminary hearing, whether Lewis in fact was the robber.

The judge declined to rule on defense counsel's motion prior to Robinson's testimony. Instead, he stated that he would rule at the appropriate time during the testimony. When called upon to rule during Robinson's testimony, there was no suggestion that the other crimes evidence was probative of any issue in the case and no evaluation of its potential prejudicial effect. The judge simply stated: "It is proper for the Commonwealth's Attorney to show that he has seen the witness before and under what circumstances." Testimony concerning the first robbery could not assist the jury in weighing Robinson's testimony at the preliminary hearing and would only impermissibly suggest to the jury that Lewis must have been the robber because he committed the first crime.

For these reasons, I would reverse the conviction.

# ORDER

**VIRGINIA:**

In the Court of Appeals of Virginia on Wednesday, the 7th day of February, 1989.

Shahee Akbar,                                                                                                          Appellant,
    against
Commonwealth of Virginia                                                              Appellee.

Counsel for the defendant has moved for leave to withdraw. *Anders v. California*, 386 U.S. 738 (1967), specifies a basis upon which counsel may, after taking specified measures to protect an indigent defendant's due process rights on appeal, request leave to withdraw:

The constitutional.requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae* . . . . Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Id.* at 744 (footnote omitted).

The petition filed in this appeal does not satisfy the *Anders* requirements. The motion to withdraw is accompanied by a petition stating that "there is nothing in the record to support the appeal." This assertion fails to meet counsel's responsibility to his client and the Court, as defined in *Anders*, to file a "brief referring to anything in the record that *might arguably* support the appeal." *Id.* at 744 (emphasis added). Counsel states in his motion and petition that "he believes the appeal is wholly frivolous after conscientious examination of the record." Until relieved of his responsibility, counsel remains an advocate for his client, not an *amicus curiae*. Although counsel may advance as his reason in support of his motion to withdraw his assessment that the appeal is frivolous, he may do so only after asserting as an advocate in his client's behalf all arguments "that might arguably support the appeal." For in the final analysis, this court, not defense counsel, must determine whether the appeal is frivolous. *Robinson v. Black*, 812 F.2d 1084, 1087 (8th Cir. 1987) (citing *Smith v. United States*, 384 F.2d 649 (8th Cir. 1967)). Defense counsel has, in effect, assumed the role of counsel for the Commonwealth. *See Penson v. Ohio*, 57 U.S.L.W. 4020 (Nov. 29, 1988). Furthermore, a copy of the petition and motion to withdraw have not been furnished to the defendant, apparently because he left the Commonwealth after serving his sentence on these convictions. Nevertheless, counsel states that he believes the defendant is incarcerated somewhere in New Jersey. Accordingly, the motion to withdraw is denied.

Counsel is directed to file an amended petition within fifteen days. This direction is given without prejudice to counsel's right to file, if he be so advised, a brief and motion fully complying with *Anders*. Counsel shall also make a *bona fide* effort, with the assistance of the Commonwealth if necessary, to locate the defendant and provide him a copy of the motion to withdraw, the petition and amended petition, and this order. If counsel locates the defendant and mails the documentation to him, the defendant may, if he be so advised, file with the Clerk of the Court of Appeals in Richmond within thirty days from the date counsel certifies that he has mailed the documents by first class mail to the defendant, his petition or pleading raising any point he chooses. Counsel shall report his efforts, whether he located the defendant, and his compliance with this order, until the coming in of which this matter is continued.

Because the issues addressed herein reoccur with sufficient regularity that members of the bar may benefit from the directives herein, the clerk is directed to have the order published.