COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys,[*] Friedman and White
Argued at Christiansburg, Virginia

GERARDO LUIS SANTANA MIELES

MEMORANDUM OPINION[**] BY
v.      Record No. 0365-23-3                   JUDGE FRANK K. FRIEDMAN
                                               MARCH 26, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Paul A. Dryer, Judge

Lauren Brice, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

Angelique Rogers, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Gerardo Luis Santana Mieles appeals his convictions, following a jury trial, for burglary,

destruction of property, and petit larceny, in violation of Code §§ 18.2-91, 18.2-137, and 18.2-96.

Santana Mieles asserts that the trial court erred when it admitted a pawn shop receipt into evidence

because the document was irrelevant and constituted improper "bolstering" pursuant to Rule of

Evidence 2:608. For the following reasons, we agree with the trial court's evidentiary rulings.

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth,"

the prevailing party below. *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)

(quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to

---

[*] Judge Humphreys participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2023.

[**] This opinion is not designated for publication. *See* Code § 17.1-413(A).

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

At 4:20 a.m. on July 8, 2021, Waynesboro Police Officer Evan Bourne was dispatched to investigate an activated business alarm at Royal Mart gas station on 185 East Broad Street in Waynesboro. After Officer Cotherine conducted a security sweep and found nothing unusual, Officer Bourne contacted a Royal Mart keyholder. Upon entering the Royal Mart, the officers noticed that the cash till had been stolen.

When Brittany Clark, a Royal Mart employee, arrived at the store at 6:00 a.m. officers were still there. Clark learned that someone had broken into the store in the early morning hours and stolen the cash till, containing $19.19, and two cartons of Newport cigarettes worth $140. Clark walked through the store and observed that the HVAC in the storage room "was torn up." Clark explained that the HVAC duct had been crushed to one side and a hole to the outside was visible. Clark noted that there were no cameras in the storage room. She did not notice any other points of entry as she walked around the store. Officer Bourne noted that the hole in the storage room's wall was large enough for a person to crawl through. The repair cost for the HVAC was $1,450.

Clark reviewed the store's surveillance video from the early morning hours.[1] The surveillance video depicted a man crawling out of the storage room on his hands and knees at 4:12 a.m. Clark testified that the second portion of the surveillance video showed the same man taking two cartons of Newport cigarettes and the cash till.[2] Clark asserted that Santana Mieles

---

[1] Clark could not download the entire surveillance video for law enforcement but she recorded the first portion of the surveillance video on her phone.

[2] Clark again was unable to download this portion of the surveillance video but she took still photographs of the footage and provided the images to law enforcement.

looked like the individual she saw in the surveillance video. Later, Clark found several packs of blue Newport cigarettes near the HVAC in the storage room. Clark noted that Royal Mart does not store their cigarettes in that room. After reviewing the store's cigarette inventory, Clark determined that the store was missing two cartons of blue Newport cigarettes.

Before the date of the burglary, Santana Mieles had conducted business several times at Giovanni Castro Hernandez's pawn shop, located less than a block from the Royal Mart gas station. On July 7, 2021, Santana Mieles visited the pawn shop and sold Hernandez several items; Hernandez created a receipt of the transaction. The receipt included a photocopy of Santana Mieles's driver's license. The Commonwealth moved to enter the receipt into evidence. Santana Mieles objected to the receipt on relevancy grounds. The trial court overruled the objection.

At 9:00 a.m. on July 8, 2021, Santana Mieles entered the pawn shop and tried to sell Hernandez two cartons of green or blue Newport cigarettes for $50 each. Hernandez refused the sale. Santana Mieles left but returned in the afternoon and attempted to sell more items. Hernandez refused to buy those items from Santana Mieles.

Kelly Annette Couch Vandevander testified that Santana Mieles called her on July 8 and stated that "he hit a gas station and asked if [she] wanted cigarettes." When Waynesboro Police Officer Amanda Weaver took Santana Mieles into custody on July 8, she recovered from his person Newport cigarettes matching those stolen from Royal Mart.

At the close of all the evidence, the jury convicted Santana Mieles of the charges. The trial court sentenced Santana Mieles to 15 years and 12 months of incarceration, with 12 years and 12 months suspended.[3] Santana Mieles appeals.

ANALYSIS

The Trial Court Did Not Abuse its Discretion by Admitting the Pawn Shop Receipt into Evidence

Santana Mieles contends that the trial court erred when it admitted the July 7 pawn shop receipt into evidence. "It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'" *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (alteration in original) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022).

Santana Mieles argues that the July 7 receipt did not tend to establish the probability or improbability of a fact at issue. He reasons that he was charged with offenses that occurred on July 8 at the Royal Mart gas station—and that the fact that he entered the pawn shop on July 7 to sell tools was irrelevant to whether he burgled the nearby Royal Mart on July 8.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003) (citing *Brickhouse v. Commonwealth*, 208 Va. 533, 536 (1968)). Here, no witness observed the burglary nor provided eyewitness testimony. Instead, the Commonwealth relied on surveillance

---

[3] We note that the sentencing summary in the January 27, 2023 final order states that the trial court imposed a sentence of ten years of imprisonment with seven years suspended. The record reflects that a different sentence (noted above) was assessed and meted out by the trial court. We remand the matter to the trial court for the sole purpose of correcting this clerical error to reflect the sentence imposed in the record. *See* Code § 8.01-428(B).

footage of the incident and circumstantial evidence to prove that Santana Mieles robbed the Royal Mart on July 8. Moreover, Santana Mieles challenged Clark's identification of him as the perpetrator on cross-examination. Thus, the identity of the perpetrator was at issue.

Hernandez testified that he was familiar with Santana Mieles because Santana Mieles had come into the pawn shop several times, including on July 7 and July 8. The July 7 receipt verified Santana Mieles's presence in the shop—it included a photocopy of his driver's license—and was relevant to show that Hernandez was familiar with Santana Mieles. Hernandez identified Santana Mieles at trial as the individual who tried to sell him items on July 7 and 8—including two cartons of Newport cigarettes.

Santana Mieles challenges the admission of the receipt under Rule 2:608 which prohibits "specific instances of the conduct of a witness" from being used to support that witness's credibility.[4] He asserts that the only time extrajudicial identifications can be used is when the

---

[4] Rule of Evidence 2:608 states in pertinent part:

(a) *Reputation evidence of the character trait for truthfulness or untruthfulness.* The credibility of a witness may be attacked or supported by evidence in the form of reputation, subject to these limitations: (1) the evidence may relate only to character trait for truthfulness or untruthfulness; (2) evidence of truthful character is admissible only after the character trait of the witness for truthfulness has been attacked by reputation evidence or otherwise; and (3) evidence is introduced that the person testifying has sufficient familiarity with the reputation to make the testimony probative.

(b) *Specific instances of conduct; extrinsic proof.* Except as otherwise provided in this Rule, by other principles of evidence, or by statute, (1) specific instances of the conduct of a witness may not be used to attack or support credibility; and (2) specific instances of the conduct of a witness may not be proved by extrinsic evidence.

witness's in-court identification has been challenged.[5] He claims that he did not attack the credibility of Herandez's identification of him, so the introduction of the July 7 receipt improperly bolstered Hernandez's testimony. He further argues that because the Commonwealth asserted that the receipt "provide[d] credence to [Hernandez's] identification of [Santana Mieles] on the day of the offense," the issue of bolstering Hernandez's credibility was before the trial court. Thus, Santana Mieles claims that his objection to the admission of the receipt encompasses both the relevance and "bolstering" arguments on appeal.[6]

We will assume, without deciding, that Santana Mieles's bolstering objection is preserved. Nonetheless, we disagree with Santana Mieles's claim that the trial court improperly admitted the pawn shop receipt.

### A. The Receipt Was Relevant

"Evidence relating to a point properly at issue in a case is relevant and, therefore, admissible if it has 'any logical tendency, however slight,' to establish that point." *Church v. Commonwealth*, 71 Va. App. 107, 123 (2019) (quoting *Ragland v. Commonwealth*, 16 Va. App. 913, 918 (1993)); Va. R. Evid. 2:401. "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in

---

[5] Santana Mieles fails to establish that the receipt is an "extrajudicial identification"—such as a photo ID or a line-up identification—it is an exhibit establishing his presence in the pawn shop.

[6] Rule 5A:18 requires that an "objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Pursuant to the rule, "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (second alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)). *See Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022).

issue is relevant.'" *Id.* (alteration in original) (quoting *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016)).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Blevins*, 40 Va. App. at 423 (citing *Brickhouse*, 208 Va. at 536). Notably, "[a] witness identifying an accused may detail all the facts within his personal knowledge bearing on the identification; any fact which shows the acquaintance and familiarity of the witness testifying to the identity of the accused is admissible." *Lewis v. Commonwealth*, 8 Va. App. 574, 579 (1989).

At trial, Hernandez, the pawn shop owner, testified he was familiar with Santana Mieles because he had come into the pawn shop several times, including on July 7 and July 8. The July 7 pawn shop receipt demonstrates that Santana Mieles was in the pawn shop on July 7.

Moreover, the identity of the perpetrator of the cigarette heist was at issue at trial. Defense counsel challenged Clark's ability to identify Santana Mieles by eliciting testimony that she initially did not recognize Santana Mieles and that her identification may be incorrect. The jury was instructed to find Santana Mieles not guilty if the Commonwealth failed to prove the identity of the perpetrator. The pawn shop receipt helps establish Hernandez's familiarity with Santana Mieles based on their interaction the day prior to the criminal offenses. In short, the pawn shop receipt was relevant; it established Hernandez's prior interaction with Santana Mieles and the pawn shop owner's familiarity with the defendant. *Lewis*, 8 Va. App. at 579 (evidence showing familiarity of witness to the identity of the accused is admissible).

B. Rule of Evidence 2:608 Does Not Prohibit Admission of the Receipt

Santana Mieles next argues that, even if the pawn shop receipt is relevant, its improper use at trial rendered it inadmissible. He suggests that Rule 2:608(b) prohibits "specific instances of the conduct of a witness" from being used to support the witness's credibility, subject to

- 7 -

certain exceptions. He further argues that even if specific conduct evidence is admissible under an exception, litigants are still prohibited from using extrinsic evidence to prove it pursuant to Rule 2:608(b)(2).

The Commonwealth counters that Rule 2:608(b), which applies to "specific instances of conduct," does not cover the pawn shop receipt because a receipt is not a specific instance of conduct; rather, it is a physical record. Further, the Commonwealth argues that the receipt was admissible by other "principle[s] of evidence," including relevancy per Rule of Evidence 2:401 and the business record exception per Code § 8.01-390.3.

We agree with the Commonwealth that Rule 2:608 does not render the receipt inadmissible. Rule 2:608(a) limits the use of reputation evidence to attack or support a witness's credibility. Additionally, Rule 2:608(b) states that "(1) specific instances of the conduct of a witness may not be used to attack or support credibility; and (2) specific instances of the conduct of a witness may not be proved by extrinsic evidence" *unless* it is otherwise admissible by another principle of evidence or statute. Santana Mieles fails to establish how the receipt might constitute "specific instances of conduct" within the meaning of Rule 2:608—or how it amounts to reputation evidence for truthfulness.

Here, the pawn shop receipt did not pertain to anyone's reputation. Additionally, rather than demonstrating a "specific instance of conduct," the pawn shop receipt is simply a physical record that shows the defendant pawned items at the store the day before the crimes at issue occurred. The business record exception under Code § 8.01-390.3 would apply to the receipt here. Under these circumstances, the pawn shop receipt is also otherwise admissible by other "principle[s] of evidence" as set out in Rule 2:608. *See also Lewis*, 8 Va. App. at 579 (stating that "[a] witness identifying an accused may detail all the facts within his personal knowledge bearing on the identification; any fact which shows the acquaintance and familiarity of the

witness testifying to the identity of the accused is admissible"); Va. R. Evid. 2:608(b). Again, the receipt is relevant as to Hernandez's personal knowledge of, and contact with, Santana Mieles which was a material issue in the case.

The trial court did not abuse its discretion in admitting the pawn shop receipt.[7]

CONCLUSION

We find that the trial court did not abuse its discretion when it admitted the July 7 pawn shop receipt. Accordingly, we affirm the trial court's decision; nonetheless, we remand the case for correction of the clerical error in the sentencing order.

*Affirmed and remanded.*

---

[7] We further note that the evidence of Santana Mieles's guilt in this record is overwhelming. Not only is he on videotape in the convenience store—and identified by a store employee but he told Vandevander "he hit a gas station" and he was trying to sell Newport cigarettes; Hernandez identified him as trying to sell the cigarettes to him at his pawn shop shortly after the burglary—and when Santana Mieles was arrested he was in possession of the Newport cigarettes matching the description of those stolen from the Royal Mart. A non-constitutional error is harmless if a fair trial and substantial justice occurred. Code § 8.01-678; *Angel v. Commonwealth*, 281 Va. 248, 268 (2011) ("[i]f other evidence of guilt is so overwhelming and the error insignificant, by comparison, supporting a conclusion that the error did not have a substantial effect on the verdict, the error is harmless") Even if the admission of the receipt had been erroneous, the conviction in this case would stand in light of the substantial evidence of Santana Mieles's guilt.

- 9 -